UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ELYSEE BRESILLA,

     Petitioner,

v.

LISA A. MITCHELL,

     Respondent.

No. 16-cv-10755-NMG

**REPORT AND RECOMMENDATION REGARDING PETITION FOR WRIT
OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254 (Dkt. No. 1)**

Cabell, U.S.M.J.

## I.   INTRODUCTION

Petitioner Elysee Bresilla is currently serving a sentence of life without parole following his conviction in the Middlesex County Superior Court on charges of first degree murder and unlawful firearm possession. Proceeding *pro se,* Bresilla petitions for habeas relief pursuant to 28 U.S.C. § 2254, primarily on the ground that several pieces of identification evidence that were admitted at trial were obtained through the use of unnecessarily suggestive procedures that violated his Fourteenth Amendment due process rights. (Dkt. No. 1). The matter has been referred to this court for a Report and Recommendation. After careful consideration, I recommend that the petition be <u>DENIED</u>.

## II.  RELEVANT BACKGROUND

### A. The Crime & Investigation

The facts as recited by the Massachusetts Supreme Judicial Court ("SJC")[1] are as follows:

> On the evening of March 27, 2006, the victim (Doowensky Nazaire), Francillon Dabady, and Mackenson Mathurin went to a night club in Cambridge.  All three were acquainted with the defendant: the victim was the defendant's former roommate; Dabady had met the defendant at the victim's home; and Mathurin attended grade school with the defendant and, on the night of the shooting, conversed with him inside the club.  As the club closed, the victim, Dabady, and Mathurin, along with many other patrons, filed out onto Massachusetts Avenue.
>
> On leaving the club, Dabady and Mathurin observed a man (whom they later identified as the defendant), holding a semiautomatic firearm, cross the street toward the crowd, aim the weapon at the victim, and fire multiple shots.  One bullet struck the victim and sent him to the ground.  Then, standing almost above the victim, the man shot him a second time before fleeing in the direction of a nearby video store.  The Cambridge police were promptly notified of the shooting and, within one minute, Officer Mark McHale arrived at the night club.
>
> Officer McHale was approached by a crowd of people shouting descriptions of the shooter.  From the noise, Officer McHale distilled a description of a black male wearing a white T-shirt and baseball hat, which he then broadcast across Cambridge police radio.  Sergeant John Gardner heard the broadcast and, within minutes, observed a black male fitting the description running down Essex Street, a few blocks away from the site of the

---

[1] In habeas proceedings, a state court's findings of fact "shall be presumed to be correct" unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Rashad v. Walsh*, 300 F.3d 27, 35 (1st Cir. 2002).  Bresilla does not raise any challenges to the findings of fact here.

shooting.  Less than four minutes after being alerted to
the shooting, Cambridge police officers found the
defendant, clad in a white T-shirt and white baseball
hat with dark pinstripes, crouching among the shrubs of
a yard on Essex Street.

Meanwhile, Officer McHale was speaking with a witness
named Daniel Jacobs.  Jacobs claimed to have had a clear
view of the shooter.  After learning that a potential
suspect had been apprehended, Officer McHale asked
Jacobs if he would be willing to observe a person who
had been stopped in the area.  Jacobs agreed, confirmed
his understanding of the precautionary advisements given
by Officer McHale, and traveled to Essex Street in
Officer McHale's police cruiser.  Although Officer
McHale observed alcohol on Jacobs's breath, he
determined that Jacobs was capable of providing an
accurate statement and performing a reliable
identification.  On viewing the defendant, who was
surrounded by police officers but did not appear to be
handcuffed, Jacobs stated, "That's the guy."

As these events unfolded, other Cambridge police
officers scoured the area in search of other evidence of
the murder.  In the parking lot behind the video store,
which was located between the night club and the yard
where the defendant was apprehended, the police found a
multicolored button-up shirt and a light brown leather
jacket with a fur collar and fur cuffs.  One of the
officers broadcast a description of the jacket over the
police radio.  The defendant overheard the broadcast and
stated, "That's my jacket."

As the police secured the scene around the jacket, two
other witnesses to the shooting, Sonny Bhatia and Fabio
Mendes, were walking to their automobile, which was
parked in the same parking lot.  Bhatia and Mendes saw
the jacket, and each identified it as the one worn by
the shooter.  David Vicini, the doorman at a nearby
restaurant, reported seeing a man wearing a light brown
jacket with a fur collar standing over the victim,
shooting.  Other witnesses variously recalled seeing a
brown leather jacket, a black leather jacket, a "bubble"
jacket, or no jacket at all.  Despite these
inconsistencies, however, most of the descriptions were
generally consistent with the defendant and the articles
of clothing found in the parking lot.  The victim was

transported to a hospital, where he died from his wounds
at approximately 3 a.m.  The defendant was transported
to the Cambridge police station, where his hands were
swabbed for gunshot primer residue testing.  Cambridge
police officers questioned the defendant regarding the
whereabouts of the gun, to which he responded, "I don't
think you guys gonna find any guns."  The defendant's
booking photograph was placed in photographic arrays to
be shown to several of the witnesses to the shooting.

On the same morning, Cambridge police arranged for
Detective Daniel McNeil, a so-called "blind presenter,"
to conduct a photographic array procedure with Dabady.
Dabady explained that an array was unnecessary, as he
already knew the shooter.  Nonetheless, Detective McNeil
read to Dabady a list of advisements from the Cambridge
police photographic identification checklist and
presented him with a sequential array.  Dabady
identified the defendant as the shooter, which McNeil
recorded on the checklist.

McNeil then conducted photographic array procedures with
Mendes and Bhatia.  Although each selected the
defendant's photograph, neither was able to express
confidence that the person in the photograph was the
shooter.  Approximately one month later, a different
blind presenter, Detective Donald Mahoney, conducted a
sequential photographic array procedure with Mathurin,
who, along with Dabady, had been with the victim on the
night of the shooting.  Mahoney recited each of the
advisements and Mathurin identified the defendant as the
shooter.  In addition, Cambridge police presented the
defendant's sister, Shelly Bresilla, with a photograph
of the jacket found in the parking lot.  She recognized
the jacket and the cellular telephone contained in one
of its pockets as gifts she had given to the defendant.

*Commonwealth v. Bresilla*, 470 Mass. 422, 424-26 (2015).

## B. **State Court Proceedings**

The petitioner was indicted on charges of first degree murder

and possession of a firearm without an FID card.  Trial began on

January 15, 2010.  On February 5, 2010, the jury convicted the

petitioner on both charges and the court sentenced him to life without parole on the murder charge and three years to three years and a day on the firearm charge.

The petitioner appealed his conviction and also moved in the trial court for a new trial. The trial court subsequently denied the motion and Bresilla appealed that denial as well.

On January 16, 2015, the SJC affirmed the judgment of conviction and the trial court's denial of the motion for new trial. *Bresilla*, 470 Mass. at 422. On April 8, 2016, the petitioner timely initiated the present habeas petition.

### C. **Habeas Petition**

The habeas petition seeks relief based on two alleged due process violations:

(1) The trial court violated the petitioner's 14th Amendment due process rights by admitting identification evidence obtained through unduly suggestive and unreliable procedures. In particular, the court admitted evidence (1) that several witnesses identified a jacket recovered near the crime scene --Bresilla's jacket-- as the same jacket worn by the shooter, (2) that multiple witnesses picked the defendant from photo arrays, and (3) that a witness identified Bresilla shortly after the crime during a show-up procedure; and

(2) Bresilla was prejudiced by the delayed disclosure of exculpatory evidence.

## III. STANDARD OF REVIEW

"Federal habeas is not an ordinary error-correcting writ." *Nadworny v. Fair*, 872 F.2d 1093, 1096 (1st Cir. 1989). It does not lie for errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Rather, a federal court may grant a writ of habeas corpus only if the underlying state court adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d) (as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)).

A state court decision is "contrary" to clearly established federal law only where "the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than the [Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A decision is an "unreasonable application" of federal law where "the state court correctly identifies the governing legal principle from [the Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Id.* The magnitude of the error "must be great enough to make the decision unreasonable in the independent and objective judgment of

the federal court." *Brown v. Ruane*, 630 F.3d 62, 67 (1st Cir. 2011) (quoting *McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir. 2002)).

Even assuming the state court committed an error, habeas relief is only appropriate if the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal citations omitted).  In other words, habeas relief cannot be granted for "harmless" errors, which are defined as those errors that did not impact the verdict.

## IV.  DISCUSSION

### A.  **The Identification Evidence**

#### i.   *Bresilla's Jacket*

During the trial, Bresilla's counsel learned that the prosecutor just prior to trial had conducted witness preparation sessions with three witnesses, Bhatia, Mendes, and Vicini.  In the course of those sessions the prosecutor showed each witness a photograph of the jacket found in the parking lot, to determine whether the witness could still identify it.  Bresilla's counsel moved to preclude the witnesses from making an in-court identification of the jacket on the ground that their testimony would be the product of a highly suggestive and prejudicial identification procedure.  The trial court concluded that there was neither misconduct nor prejudice and denied the motion.

On appeal, Bresilla claimed that the court erred in admitting the evidence. Persisting in his claim that the prosecution used an unnecessarily suggestive procedure, Bresilla argued that an overly suggestive identification procedure concerning an inanimate object can rise to the level of a denial of due process in an "extreme" case. Bresilla argued that the facts surrounding the identification of his jacket were so outrageous as to make his case that rare and extreme case. *Bresilla*, 470 Mass. at 429 (citing *Commonwealth v. Simmons*, 383 Mass. 46, 51 (1981)).

The SJC rejected this argument after finding that the prosecution did not use an overly suggestive procedure. The SJC noted that the prosecutor did not use suggestive language when presenting the photograph to the eyewitnesses and instead merely asked each witness whether they recognized the jacket in the photograph. *Id.* at 430-31. The SJC found that the prosecutor's conduct fell within the realm of reasonable trial preparation, particularly where the homicide had occurred nearly four years before the preparation sessions. Given that the prosecutor had not been obligated to conduct a photographic array, and had not engaged in any misconduct, the SJC found that admitting the eyewitness identifications of the jacket at trial did not violate Bresilla's due process rights. *Id.* at 431-32.

As an initial matter, this court agrees with the SJC that the prosecution did not use an overly suggestive procedure.

Regardless, Bresilla would not be entitled to relief on this claim because he cannot show that the SJC's decision was contrary to established Supreme Court precedent.  On the contrary, while there is well established federal law providing for the application of due process principles to the pretrial identification of suspects, that is, human beings, there is no clearly established Supreme Court precedent extending these same principles to the identification of inanimate objects.  The few appellate courts that have actually considered the issue have declined to do so. *See Johnson v. Sublett*, 63 F.3d 926, 932 (9th Cir. 1995); *Johnson v. Ross*, 955 F.2d 178, 180-81 (2nd Cir. 1992); *Inge v. Procunier*, 758 F.2d 1010, 1015 (4th Cir. 1985).

It necessarily follows that "[i]f the federal law is not clearly established by the Supreme Court, then per force the state court decision cannot be either contrary to or an unreasonable application of clearly established federal law." *Likely v. Ruane*, 642 F.3d 99, 102 (1st Cir. 2011) (citing, inter alia, *Wright v. Van Patten*, 552 U.S. 120, 126 (2008)).  This claim therefore fails.

### ii.  *The Photo Arrays*

As noted above, Cambridge police officers conducted at least three different photo array identification procedures in which a total of four witnesses selected a photograph of Bresilla as depicting the shooter.  In one instance, Dabady selected the defendant from an array shown to him by Detective Daniel McNeil.

In another Mendes and Bhatia each selected Bresilla's photograph from an array shown to them by Detective Daniel McNeil.  In the last instance, Mathurin selected the defendant from an array shown to him by Detective Donald Mahoney.

Prior to trial, Bresilla moved to suppress the identifications by Dabady and Mathurin on the ground that the procedure used in each case was unnecessarily suggestive.  The trial court denied the motion after finding that the arrays were not unnecessarily suggestive, noting that the police had used blind presenters, had given the witnesses precautionary advisements, and that both witnesses were already familiar with the defendant.

Post-conviction, Bresilla argued that the court erred in admitting evidence of the arrays conducted with Dabady and Mathurin as well as with Mendes and Bhatia.[2]  The SJC disagreed and found that the trial court had articulated the correct standard, placing on the defendant the burden of proving that the identification procedures were so unnecessarily suggestive and conducive to irreparable mistaken identification as to deny the defendant due process of law.  *Bresilla,* 470 Mass. at 432-433.  The SJC found based on the evidence at that juncture that the trial court's

---

[2] The motion judge found that the prosecution had acted improperly with respect to Bhatia so Bhatia was not permitted to identify the defendant or any of the photographs he picked out of the photographic array during his trial testimony.

findings were accurate, and her conclusions of law were sound. *Id.* at 433.

Of note, it became apparent during the trial that some of the identification forms the police had used in conducting the array procedures had been modified at some point.  The trial court determined that the modifications were of no significance, regardless of whether they were the result of sloppiness or affirmative conduct, because they did not affect the conditions under which the arrays themselves had been conducted.  *Id.*  The trial judge moreover exercised her discretion to craft a remedy, which in this instance involved permitting defense counsel "to cast considerable doubt over the thoroughness and integrity of the police investigation," eliminating any prejudice inuring to Bresilla as a result of the modifications.  *Id.*

Bresilla raised the issue of the modifications in his motion for a new trial but the trial court rejected it there as well. The court determined that the modifications did not prejudice Bresilla because (1) several of the changes, such as the addition of file numbers and the name of the person who composed the arrays, were completely innocuous; (2) a modification to the identification form signed by Mendes actually benefitted Bresilla because it overtly indicated that Mendes was unable to identify the perpetrator; (3) the evidence at trial plainly established that each witness was read the full menu of advisements even if

the form did not, and was asked to state how certain he was of the identification; (4) the fact that Dabady and Mathurin already knew Bresilla at the time they identified him, a fact not noted on the forms, was not germane; and (5) the fact that there was a one-month delay in the Mathurin array was not ideal but also was not so lengthy as to render the identification procedure unduly suggestive.   The SJC concluded that, taking all the evidence together, Bresilla was not deprived of due process by the manner in which the photographic identifications of him were made.   *Id.* at 433-434.

The SJC's conclusion was not contrary to clearly established federal law.   The Supreme Court has held that identification through a photographic array "should be suppressed only where the photographic identification procedure was so [unnecessarily] suggestive as to give rise to a very substantial likelihood of irreparable misidentification."   *Perry v. New Hampshire*, 565 U.S. 228, 238 (2012) (alteration in original) (quoting *Simmons v. United States*, 390 U.S. 377, 384-85, (1968)).   This line of cases has "emphasized ... that due process concerns arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary."   *Id.* at 238-239 (citing *Manson v. Brathwaite*, 432 U.S. 98, 107, 109 (1977); *Neil v. Biggers*, 409 U.S. 188, 198 (1972)).

This court agrees with the SJC that nothing in the record suggested that the photographic array procedures the police used were unnecessarily suggestive. As the SJC noted, the police employed multiple safeguards in order to minimize the suggestibility of the circumstances, including sequential presentation of photographs in the array, presenters who were blind to the identity of the suspect, a recent — and, therefore, accurate — photograph of the petitioner, recording the eyewitnesses' level of confidence in the identification, and precautionary statements. *Bresilla*, 470 Mass. at 426-27. Accordingly, there is no basis to find that the photo arrays used here were suggestive and the due process inquiry therefore ends. *See Foster v. California*, 394 U.S. 440, 443 n. 2 (1969) (holding that if the flaws in identification procedures are not so suggestive as to violate due process, "the reliability of properly admitted eyewitness identification, like the credibility of the other parts of the prosecution's case[,] is a matter for the jury"); *Manson v. Brathwaite*, 432 U.S. at 116 ("Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.").

In sum, the petitioner is not entitled to habeas relief on this claim.[3]

---

[3] Bresilla asks for an evidentiary hearing in order to further question Detective McNeil and Sergeant Boyle regarding the modifications made to the eyewitness ID forms. No hearing is warranted here where the trial court

### iii. *The Show-Up Identification*

As noted above, Officer McHale found a witness who claimed to have had a clear view of the shooter and was willing to see if he could identify a person who had been stopped in the area.  Officer McHale gave the witness precautionary advisements and brought him to the suspect's location in his cruiser.  Officer McHale observed alcohol on the witness' breath but determined that he was nonetheless capable of providing an accurate statement and performing a reliable identification.  On viewing the petitioner, who was surrounded by police officers but did not appear to be handcuffed, the witness stated, "That's the guy."

Bresilla contends in his petition that this procedure was unnecessarily suggestive but he does not go on to address the issue in his memorandum, and the respondent presumably for that reason does not address it either.  As such, Bresilla has waived this claim.  The First Circuit has consistently held that "issues adverted to in a perfunctory fashion, unaccompanied by some effort at developed argumentation, are deemed waived." *Watson v. Trans Union LLC*, 223 F. App'x 5, 6 (1st Cir. 2007) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)) (internal quotation

---

conducted a two-day evidentiary hearing on this issue and the officers were "extensively cross-examined."  *Bresilla,* 470 Mass. at 428; *Cullen v. Pinholster,* 563 U.S. 170, 185 (2011) (federal habeas petitioner seeking to show that state court's decision on the merits was contrary to established federal law must establish eligibility for relief based solely on the record that was before that state court).

marks omitted).  And while *pro se* defendants are accorded more leeway, *see, e.g. Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997), they are ultimately still subject to this standard. *See e.g. United States v. Nishnianidze*, 342 F.3d 6, 18 (1st Cir. 2003); *Strahan v. Coxe*, 127 F.3d 155, 172 (1st Cir. 1997).

These principles apply with equal force to habeas petitioners; courts in this district have repeatedly found unbriefed petition claims to be waived. *See e.g., Miller v. Marchilli,* No. 17-10469-DJC, 2019 WL 145559, at *6 (D. Mass. January 9, 2019)(petitioner waived claim raised in his petition but not addressed in his memorandum); *Perkins v. Russo*, No. 02-10460-MLW, 2007 WL 2507741, at *3 (D. Mass. August 31, 2007) (habeas claim that trial court improperly limited closing arguments deemed waived where petitioner "present[ed] no arguments in support of this claim"); *Blake v. Medeiros*, No. 14-CV-11845-IT, 2017 WL 4076104, at *4 (D. Mass. Sept. 14, 2017) (concluding two claims waived where, among other things, "[the petitioner] does not address either claim in his memorandum"); *Smiley v. Maloney*, No. 01-11648-GAO, 2003 WL 23327540, at *15 (D. Mass. October 31, 2003) (finding claim waived where "petitioner has not, in his Memorandum of Law in support of the petition, advanced any argument, much less reasoned argument, on this point"), aff'd, 422 F.3d 17 (1st Cir. 2005).  So too, this claim is waived and does not merit further attention.

B. **Ground Two:  Late Disclosure of Exculpatory Evidence**

As noted above, Bresilla's counsel learned during the trial that the prosecutor had conducted witness preparation sessions with three witnesses shortly before the trial and had in the course of those sessions shown each witness a photograph of the jacket found in the parking lot, to determine whether the witness could still identify it.  Bresilla argues that the prosecution's failure to disclose this evidence sooner than it did violated its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963).  In *Brady* the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87.

Bresilla argues that evidence of the preparation sessions was exculpatory because Mendes and Vicini had at the time of the crime only described the perpetrator's jacket, and by contrast only positively identified the petitioner's jacket from the photograph nearly four years later as a result of the trial preparation. Bresilla reasons that where Mendes and Vicini's respective statements at the time of the crime differed from their respective testimony when prepared for trial, the more recent evidence was inconsistent and constituted exculpatory impeachment evidence which should have been disclosed sooner than it was.

16

The SJC rejected this argument.  The SJC noted first that Bresilla's argument was factually not entirely correct:  Mendes *did* at the time of the crime identify the jacket found near the crime as the one worn by the shooter.  Moreover, although Vicini had previously only described the jacket to the police, Bresilla could hardly claim unfair surprise where the prosecution had previously disclosed that it intended to elicit a jacket identification from Vicini at trial.

The SJC also took issue with Bresilla's reasoning.  The court found that even assuming the prosecution should have disclosed evidence of the pretrial jacket-related identifications sooner than it did, Bresilla could not have been prejudiced as he contended.  Bresilla identified three particular witnesses he claims he might have used the evidence to more effectively cross-examine but those witnesses were called to testify about other things and were not called to identify the jacket.  By contrast, and as the SJC noted, Bresilla was able to use the evidence to cross-examine the witnesses who had identified the jacket, that is, Mendes and Vicini.  Consequently, there was no basis to conclude that a restructured cross-examination based on an earlier disclosure would have created a reasonable doubt that otherwise would not have existed.  *Bresilla*, 470 Mass. at 432.

The SJC's treatment of this claim was not contrary to established federal law.  True, a failure by the prosecution to

17

disclose evidence material to a defendant's guilt constitutes a violation of due process, irrespective of the prosecution's good faith effort. *Brady*, 373 U.S. at 87. But evidence is material only when "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different," that is, it would have "undermine[d] confidence in the outcome of the trial." *Turner v. United States*, 137 S. Ct. 1885, 1893 (2017).

Here, even assuming that evidence of the prosecution's pretrial prep sessions regarding identification of the jacket was exculpatory or provided substance for impeachment, the timing of the disclosure demonstrably did not materially affect the trial where Bresilla was in fact able to use the evidence as intended to impeach the testifying witnesses. Because he was able to do so, there is logically no reasonable probability that the outcome of the trial would have been different had the evidence been disclosed sooner. The SJC thus reasonably determined that the timing of the disclosure of the evidence did not violate Bresilla's due process rights.

## V.   CONCLUSION

For the foregoing reasons, I recommend that the petition for habeas relief (Dkt. No. 1) be <u>DENIED</u>. I recommend further that the court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2254 Cases because there is no

substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).[4]

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  February 11, 2019

---

[4] The parties are hereby advised that under the provisions of Federal Rule of Civil Procedure 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. *See Keating v. Secretary of Health and Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *see also Thomas v. Arn*, 474 U.S. 140 (1985).